UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:26-CV-00355-CRS

KAUFMAN & STIGGER, PLLC PLAINTIFF

v.

HUGHES & COLEMAN, PLLC, *et al* DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This civil action arises from allegations of trademark infringement. More particularly, it arises from allegations of infringement of an unregistered trademark. Plaintiff, Kaufman & Stigger, PLLC, is a personal injury law firm that, since 2001, has marketed itself by using phrases such as "Get the Tiger on your Side," accompanied by the image of a sometimes animated, sometimes not, tiger. Its website presently uses the phrase "Get the Tiger Results." Among other types of plaintiffs, Kaufman & Stigger represents people who were injured in motorcycle accidents. Defendants are Hughes & Coleman, PLLC and the American Association of Motorcycle Injury Law, Inc. ("AAMIL"). AAMIL is a company that specializes in generating leads for personal injury lawyers who take the cases of plaintiffs who were involved in motorcycle accidents. Like Kaufman & Stigger, AAMIL uses the image of a tiger to solicit potential plaintiffs. Its chief image is a tiger's head coupled with the image of a roadway. And, in a similar manner to Kaufman & Stigger, AAMIL has coined itself "Law Tigers." Hughes & Coleman is a personal injury law firm. It is a member of AAMIL. And, like Kaufman & Stigger, it represents plaintiffs who were involved in motorcycle accidents.

Kentucky is Kaufman & Stigger's primary market. The firm is located in Louisville, Kentucky, and it advertises there as well as in Lexington and Bowling Green. It also advertises in Evansville, Indiana. AAMIL is an Arizona company and is based in Phoenix, Arizona. According

to Kaufman & Stigger, AAMIL stayed out of Kentucky for several years, but that changed in 2026. For reasons yet to be divulged, AAMIL entered the Kentucky market to generate clients who would, ostensibly and in turn, be routed to Hughes & Coleman, which is headquartered in Bowling Green. As a result, this case is focused on conduct occurring in Kentucky. It is now before the Court on Plaintiff's Motion for Leave to Amend its Verified Complaint (DN 25) and Defendants' Motion for a Judgment on the Pleadings (DN 26). For the reasons set forth below, Kaufman & Stigger's Motion to Amend will be granted and Defendants' Motion for a Judgment on the Pleadings will be denied as moot.

## BACKGROUND

The following facts which pertain to alleged trademark infringement are taken from Kaufman & Stigger's proposed first amended complaint (DN 25-3). In 2001, Kaufman & Stigger contracted with a marketing agency, Blue Dog Productions, for the purpose of its creating tiger-themed advertising materials for use by Kaufman & Stigger. Proposed Amd. Compl., DN 25-3, at ¶¶ 11, 13. In 2001, Kaufman & Stigger and Blue Dog entered into a service agreement and later renewed their agreement via licensing contracts. *Id.* at ¶ 13. Kaufman & Stigger's agreements with Blue Dog granted it the exclusive right to use the tiger-themed materials in Louisville, Lexington, and Bowling Green, Kentucky as well as in Evansville, Indiana. *Id.* at ¶ 14. Kaufman & Stigger began using Blue Dog's tiger-themed advertising materials in 2001 by using them in a television advertisement. *Id.* at ¶ 15. That commercial used "the words TIGER, THE TIGER, and TIGER ON YOUR SIDE, as well as tiger images". *Id.* (capitalization in original).

Kaufman & Stigger has continuously used these words and images, which it calls the "TIGER MARK," since 2002. *Id.* And, since 2002, it has used the "TIGER MARK" in different media for the purpose of advertising its services, including its website and social media. *Id.* at ¶¶ 15-19 (alleging use on website; on social media; in television ads aired by several local Kentucky

stations; and in the yellow pages). Kaufman & Stigger attached "representative samples" of its use of the tiger-themed materials as Exhibit 1 to its proposed first amended complaint. *Id.* at ¶ 19; Exhibit 1, DN 25-4 (collecting still shots of television ads from 2002, 2003, 2005, 2014, 2022, and 2024; a 2002 yellow-pages ad; 2012 signage and use on a wrapped vehicle; images used on its website from 2014; images on a promotional banner, t-shirts, mugs, folders and greeting cards used in 2011, 2013, 2015, and 2017). Kaufman & Stigger alleges that "[o]ver the years," consumers within the geographic region in which it advertises itself have come to associate the TIGER MARK with Kaufman & Stigger and "the quality legal services" it provides. *Id.* at ¶¶ 21-23. That is, since 2001, Kaufman & Stigger has used the TIGER MARK to identify itself and to distinguish itself from other personal injury lawyers.

No later than April 23, 2026, AAMIL entered into Kaufman & Stigger's Kentucky marketplaces and began targeting potential motorcycle-accident plaintiffs who may be looking for legal representation. *Id.* at ¶¶ 37-39. AAMIL's advertising includes a "Law Tigers Logo and tiger imagery." *Id.* at ¶ 39. Kaufman & Stigger alleges that AAMIL's advertising materials are "confusingly similar to" its "TIGER MARK" as it too features a tiger with green eyes and an open mouth. *Id.* at ¶ 42. As well, Kaufman & Stigger alleges that "[t]he tiger imagery used by the parties is . . . creates an overall similar commercial impression of an aggressive tiger fighting for legal rights." *Id.* Further, "[r]eference to a personal injury firm as 'Law Tigers' . . . where Plaintiff has an established reputation as 'The Tiger' in the field of personal injury has confused and is likely to continue to confuse the public." *Id.* at ¶ 43. The proposed amended complaint alleges an instance of actual confusion, *id.* at ¶ 44, and alleges a likelihood of confusion going forward if AAMIL is allowed to market in Kaufman & Stigger's marketing territory. *Id.* at ¶ 49. More specifically, Kaufman & Stigger has alleged that AAMIL's advertising is likely to confuse and deceive the

"consuming public" as to the source of the legal services being promoted, or as to whether Kaufman & Stigger is affiliated with AAMIL, or has authorized it in some way. *Id.* at ¶¶ 49-50.

In addition to these allegations of infringement, Kaufman & Stigger seeks to add claims for both false advertising and for the cancellation, in whole or in part, of certain registered trademarks belonging to AAMIL which Kaufman & Stigger contends should be cancelled due to fraud, non-use and/or abandonment. The crux of the cancellation claims rests on these allegations: (1) AAMIL applied to register certain trademarks, and then applied to renew those registrations, for use in connection with the provision of "Legal Services"; however, (2) AAMIL is not a law firm, has never been a law firm, and so could never have used the at-issue marks in connection with the provision of services that can only be provided by licensed attorneys. Thus, according to Kaufman & Stigger, AAMIL obtained its registrations and renewals based on false representations. At the same time, Kaufman & Stigger has alleged that AAMIL falsely represented its ownership of certain marks and its first-use dates with respect to certain marks which also warrants cancellation. Finally, Kaufman & Stigger alleges that to the extent AAMIL has advertised itself as providing "Legal Services," again services that can provided only by lawyers, it has engaged in false advertising because AAMIL is not a law firm.

Defendants have attacked these proposed allegations and the other proposed claims on a myriad of grounds—all of which are based on alleged futility of amendment. Its central contention is an assertion that Kaufman & Stigger does not have a valid trademark interest on which it can base it claims, rendering amendment futile. Defendants attack the proposed cancellation and false advertising on the ground that AAMIL does provide "legal services" as its understands that phrase. Thus, according to Defendants, all allegations to the contrary are false which renders all claims that are based on those false allegations futile. That argument is based on what Defendants assert the proof now shows or will ultimately show, however. Defendants make the same error with

respect to other futility arguments. Their remaining futility arguments are simply unavailing. Accordingly, the Court finds that Kaufman & Stigger should be allowed to amend. Finally, that amendment moots Defendant's Motion for a Judgment on the Pleadings and the Court will deny it on that ground.

## ANALYSIS

### A. Kaufman & Stigger's Motion to Amend

Generally, leave to amend should be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, leave need not be given if amendment would be futile. *Id.* Amendment is futile if a claim or claims would not survive a Rule 12(b)(6) motion to dismiss. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). A Rule 12(b)(6) motion tests the sufficiency of a complaint. To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be plausible, the "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted) (emphasis in original). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Id.* (citation omitted).

Furthermore, in reviewing a Rule 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Also, the court must read the allegations "'as a whole.'" *Barton v. Neeley*, 114 F.4th 581, 587 (6th Cir. 2024) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011)).

**1. Kaufman & Stigger's Ability to Sue for Trademark Infringement**

Kaufman & Stigger has sued Defendants pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). It has also sued pursuant to Kentucky law for trademark infringement and unfair competition. Compl., DN 1, at PageID# 8-11. Defendants have asserted, and Kaufman & Stigger has not disagreed, that the standard for Kaufman & Stigger's state law claims are the same as those which govern its trademark infringement claims under the Lanham Act.[1] Accordingly, the Court's analysis will refer to those Lanham Act standards. Presently, Kaufman & Stigger seeks leave to amend to clarify the factual basis for its § 1125(a) infringement claim.

Section 1125(a) of the Lanham Act provides:

> Any person who, on or in connection with any . . . services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which… is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person… shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). The elements necessary to state an infringement claim under § 1125(a) are "(1) ownership of a specific service mark in connection with specific services; (2) continuous use of the service mark; (3) establishment of secondary meaning if the mark is descriptive; and (4) a likelihood of confusion amongst consumers due to the contemporaneous use of the parties' service marks in connection with the parties' respective services." *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.,* 931 F.2d 1100, 1105 (6th Cir. 1991). Defendants' opposition to Kaufman & Stigger's Motion to Amend rests entirely on the first element: ownership. Accordingly, this Opinion is limited to that element and argument.

---

[1] Mot. for a Judg. on the Pldgs., DN 26, at PageID# 262 (case law "holds that Kentucky common law trademark infringement and unfair competition claims completely overlap with the analysis of federal infringement claims.").

Defendants contend that Kaufman & Stigger does not own the "tiger concept," *i.e.*, it does not own a protectable trademark, and therefore "has no legal right to sue" them for their use of "the LAW TIGERS trademarks AAMIL owns and [Hughes & Coleman] rightfully has used." Response, DN 34, at PageID# 508.[2] They contend that, at best, Kaufman & Stigger has licensed "a vague and undefined right to market itself with a 'tiger concept' for twenty-five years from the owner of that tiger concept.'" *Id.* Defendants maintain that "this lawsuit in its entirety falls apart as a result of K&S [Kaufman & Stigger] having no ownership interest in TIGER ON YOUR SIDE or the 'tiger concept.'" *Id.* at PageID# 514. In support of that contention, Defendants argue that it is "black letter law" that a licensee's use of a mark does not confer ownership rights in that mark. *Id.* at PageID# 514-15. They argue that the contracts between Kaufman & Stigger and Blue Dog establish that Kaufman & Stigger has no ownership rights in Blue Dog's creations, including the "TIGER ON YOUR SIDE mark." *Id.* at PageID# 510. And, as a trademark licensee, Kaufman & Stigger has no standing to sue for infringement. *Id.*

Defendant's argument is unavailing given that Kaufman & Stigger has not alleged that it licensed a trademark from Blue Dog. Instead, it has pleaded that Blue Dog developed tiger-themed marketing materials which included a slogan and imagery, materials to which they collectively refer as the "tiger theme" or "Tiger Concept," ostensibly for ease of reference. The proposed amended complaint's allegations on this point are as follows:

> 11. In 2001, Plaintiff retained the services of an advertising and marketing agency, Blue Dog Productions ("Blue Dog"), located in Dayton, Ohio, for the

[2] Defendants filed DN 34, a second copy of their Response, under seal. They did so to keep quotations of contract terms for "attorney eyes only" pursuant to the parties' confidentiality agreement. While the Court respects the parties' confidentiality agreement, upon review of the Response brief, it finds that none of the quoted passages disclose any propriety information. Rather, the quoted language consists of general terms as to the nature of what Blue Dog created for Kaufman & Stigger which has been put into the public marketplace, as opposed to trade secrets. Thus, for the Court's and the parties' ease of reference, this Opinion references DN 34, the sealed version of the Response. The unsealed version is DN 32 which is identical except for its having been redacted so as to conceal the quoted terms.

> purpose of producing marketing campaigns, including television and other advertisements, for Plaintiff. . . .
>
> 13. In 2001, Plaintiff and Blue Dog entered into a service agreement and, thereafter, license agreements for Plaintiff's use of the "tiger theme" to identify its legal services.[3]
>
> 14. The agreements between Blue Dog and Plaintiff granted Plaintiff the exclusive rights to utilize the "tiger theme" to identify Plaintiff's legal services in a territory defined by the Nielsen Designated Marketing Areas ("DMAs") for Louisville, Lexington, Bowling Green, Kentucky, and Evansville, Indiana.
>
> 15. Blue Dog produced the first television commercial using the "tiger theme" for Plaintiff in 2001. This commercial, as well as subsequent commercials and other marketing material used by Plaintiff since 2002, uses the words TIGER, THE TIGER, and TIGER ON YOUR SIDE, as well as tiger images (the "TIGER Mark"). . . .

Proposed First Amd. Compl., DN 25-3. Kaufman & Stigger attached examples of its use of the tiger-themed materials as Exhibit 1 to its proposed amended complaint, DN 25-4. Thus, while Kaufman & Stigger has argued that even if it were a trademark licensee, it would have standing to bring an infringement claim, its pleading does not allege that it licensed a trademark from Blue Dog. Nor has there been any argument that Blue Dog itself has adopted the tiger-themed slogan and images it created as its trademark, *i.e.* that Blue Dog has used those creations to identify and distinguish itself and its services in the marketplace, such that it had a trademark which it could license to Kaufman & Stigger.

Nor does the Court find, contrary to Defendants' argument, that the contracts between Blue Dog and Kaufman & Stigger require the conclusion that Kaufman & Stigger has no trademark rights because it licensed Blue Dog's creative works/marketing materials. Defendants are correct that under the terms of Kaufman & Stigger's contracts with Blue Dog, Blue Dog retained ownership rights in the materials it created and authored. However, rights to creative works sound

[3] The current record shows that Kaufman & Stigger and Blue Dog entered into three contracts, a 2001 Service Agreement, a 2009 License Agreement, and a 2026 License Agreement (Renewal). As previously noted, these documents have been filed under seal.

in copyright, not trademark. That is, "[t]he right to a trademark does not come from its creation or coining; rather, it emanates from its public use in connection with goods or services." 1A Gilson on Trademarks § 3A.02.[4] Stated another way, "[t]he ordinary trade-mark has no necessary relation to invention or discovery." *Trade-Mark Cases*, 100 U.S. 82, 94 (1879). Rather, it is "the adoption of something already in existence as the distinctive symbol of the party using it." *Id.* And, "[a]t common law the exclusive right to it grows out of its use . . . ." But possessing a trademark does not "depend upon novelty, invention, discovery, nor any work of the brain. It requires no fancy or imagination, no genius, no laborious thought. It is simply founded on priority of appropriation." *Id.* That is, trademark rights are born of adoption and use in the marketplace, not authorship of design or slogan. *Id.*

In short, copyright law gives authors and inventors rights to their creation while adoption and continuous use of imagery and words as a means to identify and distinguish one's products or services in the marketplace is what results in a protectable trademark. *Id.*; *Feist Pub., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340 (1991) (*The Trade-Mark Cases* explained that copyright protects originality of authorship); *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003) (Lanham Act not designed to protect originality or creativity; copyright and patent laws were). Accordingly, the Court of Appeals for the Sixth Circuit has explained "ownership rights flow ***only*** from prior appropriation and actual use in the market." *Homeowners Grp.*, 931 F.2d at 1105 (6th Cir. 1991) (citation omitted) (emphasis added). Thus, in the context of trademark law, "ownership" is not outright ownership of a creative piece of work; rather, it is the exclusive right to use, control, and enforce a brand identifier in connection with goods or services:

---

[4] *See also Canal Co. v. Clark,* 80 U.S., 311, 322 (1871) ("Undoubtedly words or devices may be adopted as trademarks which are not original inventions of him who adopts them, and courts of equity will protect him against any fraudulent appropriation or imitation of them by others.").

> The Supreme Court observed that "[t]he hallmark of a protected property interest is the right to exclude others." Therefore, trademarks "are the 'property' of the owner because he can exclude others from using them . . . . "

1 McCarthy on Trademarks and Unfair Competition § 2:10 (5th ed.) (citations omitted).

Here, Kaufman & Stigger's proposed amended complaint pleads that it licensed tigered-themed "marketing material" from Blue Dog which it has used in television ads, in the yellow pages, on its website, on a wrapped vehicle, and in marketing swag such as t-shirts and mugs. Proposed Amd. Compl., DN 25-3, at ¶¶ 11, 13-19; Exhibit 1, DN 25-4. Defendants do not contend otherwise. Instead, their argument is focused solely on the lack of ownership of Blue Dog's creations as a ground by which to deny amendment—a lack which they say is evident from the Blue Dog contracts. Response, DN 34, at PageID# 514-17. Again, it is true that Blue Dog reserved ownership rights in its creations: "All Tiger Brand artwork, characters, animations, likenesses, and derivative works remain the sole and exclusive property of [Blue Dog], whether created before or after the Effective Date. . . ." Response, DN 34, at PageID# 517 (quoting 2026 contract). But this language does not help Defendants. Instead, it shows that Blue Dog reserved authorship rights to its "creations," *i.e.,* original slogans and artwork, such a reservation is the essence of copyright, not trademark. That reservation protects Blue Dog from any attempt by Kaufman & Stigger to claim ownership in Blue Dog's creations. It does not demand the conclusion that Kaufman & Stigger has no trademark.

For this reason, the McCarthy treatise on which Defendants rely does not help them. Defendants cite McCarthy, 5th Ed. § 18:52 for the proposition that a trademark licensee obtains no ownership rights against the owner of a trademark, the implication being that, Kaufman & Stigger cannot sue for infringement for this reason. Again, Kaufman & Stigger has not pleaded that it licensed a trademark from Blue Dog. Thus, this proposition from the McCarthy treatise is inapposite. Even so, McCarthy makes clear that while trademark ownership protects a licensor of

a trademark from any claims against it by the licensee: "It is clear that use of a mark by a person while such person was a licensee builds up no rights in the mark ***as against the licensor.*** . . ." 2 McCarthy on Trademarks and Unfair Competition § 18:52 (5th ed.) (emphasis added). Thus, if a licensee uses a licensed mark after the license has expired, such use would constitute infringement of the owner's mark. *Id.*

Finally, to the extent Defendants rely on cases about licensees of trademarks, they too are inapposite as Kaufman & Stigger has not alleged that it licensed a trademark from Blue Dog. Thus, those decisions do not provide a ground on which to deny amendment by Kaufman & Stigger. Even so, it appears that trademark licensees with exclusive rights of use in geographical territory can sue under § 1125(a). *See e.g., Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642 (6th Cir. 1982) (licensee of Big Boy trademark had right to sue for infringement under § 1125(a) based on third party competitor's use of Big Boy trademark).

**2. The Sufficiency of Kaufman & Stigger' False Advertising Allegations**

To win a false advertising claim under the Lanham Act, Kaufman & Stigger "ultimately would have to show that the Defendants (1) made false or misleading statements of fact about their products, (2) which actually deceived or had a tendency to deceive a substantial portion of the intended audience, and (3) likely influenced the deceived consumers' purchasing decisions." *Wysong Corporation v. APN, Inc. (17-1975)*, 889 F.3d 267, 270 (6th Cir. 2018) (citing *Am. Council of Certified Podiatric Phys. & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999)). "A Lanham Act claimant must also show a link to interstate commerce and a causal link between the false advertising and his own injury." *Id.* at n.1. Of course, the question before the Court on Kaufman & Stigger's Motion to Amend is not whether it has proven a false advertising claim but whether it has sufficiently pleaded such a claim.

Kaufman & Stigger's proposed amended complaint alleges that "[t]o the extent AAMIL does not provide Legal Services, as AAMIL contends, its representations to the consuming public are false." Proposed Amd. Compl., DN 25-3, at ¶ 130. Kaufman & Stigger's pleading defines "Legal Services" to include "'legal services,' 'legal advisory services,' 'provision of legal consultations, legal advice and representation of others in legal matters, legal research . . . .'" *Id.* at ¶ 67. The proposed amended complaint also alleges that "AAMIL is not a law firm" and "does not provide Legal Services." *Id.* at ¶ 72. Nonetheless, it advertises itself as "'Motorcycle Accident Attorneys.'" *Id.* at ¶ 73. Also, AAMIL's ads state that it "offers free 'case evaluations,''; the ads refer to "'Legal Services,'"; the ads offer a "'Free Rider Benefit Kit' that provides 'free legal tips' to motorcyclists"; and the ads "promote[ ] a twenty-four-hour accident hotline through which motorcyclists are invited to contact 'our motorcycle accident attorneys.'" *Id*. The next paragraph alleges that "[t]he foregoing representations are . . . literally false or, in the alternative, misleading." *Id.* at ¶ 74.

Despite the allegations as to what content is false, Defendants argue that the proposed amended complaint does no more than recite the elements of a false advertising claim under the Lanham Act and "pleads virtually no facts to support them." Response, DN 34, at PageID# 528. Thus, according to Defendants, the claim is "futile and cannot survive a Rule 12(b)(6) motion." *Id.* at PageID# 528-29. More specifically, they take Kaufman & Stigger's pleading to task for its failure to explain "why the identified statements are false," implying that this failure renders the claim vulnerable to dismissal. *Id.* at PageID# 529. The Court disagrees. The proposed amended complaint does allege facts that explain why the statements are false. It repeatedly alleges that AAMIL is not a law firm. Proposed Amd. Compl., DN 25-3, at ¶¶ 66, 72, and 117. The reasonable inference drawn from this allegation is that AAMIL does not employ attorneys and therefore does

not provide its customers with any sort of legal advice. Indeed, the proposed amended complaint alleges that because AAMIL is not a law firm it "cannot provide legal services." *Id.* at ¶ 117.

For similar reasons, Defendants' assertion that Kaufman & Stigger has failed to include fact allegations with respect to causation rings hollow. Response, DN 34, at PageID# 530 (proposed pleading "points to no factual examples" of injury). Contrary to Defendants' assertion, the proposed amended complaint alleges that AAMIL's ads have already diverted business from Kaufman & Stigger. Paragraph 44 describes a caller who had just been involved in a motorcycle accident and who hung up on Kaufman & Stigger when he found out that it was not AAMIL. At this stage, he Court must assume that the call took place,[5] and it is reasonable to infer from the allegations as to what happened that the caller wanted to give his business to AAMIL, not Kaufman & Stigger.

Additionally and notably, Kaufman & Stigger is proceeding on the theory that AAMIL's ads are "literally false." Proposed Amd. Compl., DN 25-3, at ¶ 74. Under that liability theory, "courts presume that consumers were actually deceived upon a showing of literal falsity." *Wysong Corporation,* 889 F.3d at 270–71. Again, Kaufman & Stigger has alleged that because AAMIL is not a law firm, it cannot offer legal services. Thus, to the extent it advertises to the contrary, those statements are literally false.

Next, to the extent that Kaufman & Stigger is also proceeding, alternatively, on the theory that AAMIL's ads are misleading, its proposed fact allegations must "support a plausible inference that the challenged advertisements in fact misled a significant number of reasonable consumers." *Id.* at 271. Defendants assert that Kaufman & Stigger has failed to proffer such allegations and instead relies solely on a formulaic recitation of that element. Response, DN 34, at PageID# 529.

---

[5] *Barton v. Neeley*, 114 F.4th 581, 587 (6th Cir. 2024)(court reads the pleading as whole and draws all reasonable inferences from its allegations which the Court assumes to be true.).

However, Defendants have not provided any argument that meaningfully develops this issue. Nor is the Court required to develop an argument for them. *See e.g., McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on it bones.") (citations omitted). As a result, at this juncture, the Court declines to entertain Defendant's contention that Kaufman & Stigger has failed to proffer facts that plead a plausible claim for false advertising based on misleading statements.

Finally, Defendants contend that AAMIL does, in fact, offer the services for which it advertises. Response, DN 34, at PageID# 529. Again, that assertion is about proof, not pleading. To the extent Defendants do, in fact, provide the advertised legal services, they are free to deny contrary allegations and put Kaufman & Stigger to the task of making its case. At this stage, however, the Court is tasked solely with evaluating the sufficiency of the proposed allegations.

**3. The Sufficiency of Kaufman & Stigger's Cancellation Allegations**

Defendants make several arguments against allowing Kaufman & Stigger's proffered cancellation claims to proceed. They first assert that Kaufman & Stigger cannot state any claim for cancellation because having no ownership in a trademark, it is not "likely to be damaged" by AAMIL's registrations of its marks. *Id.* at PageID# 519. That argument is unavailing given what "ownership" means in terms of trademark law as explained previously herein. Second, Defendants contend that Kaufman & Stigger's cancellation claims fail for lack of standing because it must, but does not, allege with specificity how it is "likely to be damaged" by AAMIL's use of the at-issue trademarks. *Id.* According to Defendants, the only harm alleged is in Paragraph 121 and consists of Defendants' reliance on AAMIL's registrations to defend Kaufman & Stigger's infringement claims. *Id.* Defendants have read the proposed amended complaint too narrowly. Read in context with the preceding paragraphs, Paragraph 121 alleges two things: (1) Kaufman &

Stigger has been damaged by AAMIL's fraudulent registrations and (2) given that the referenced registrations were procured by fraud, Defendants are improperly relying on those registrations as a ground to defeat Kaufman & Stigger's infringement claims in this case. Proposed Amd. Compl., DN 25-3, at ¶ 119-21. Contrary to Defendants' argument, this allegation does not constitute an admission that Kaufman & Stigger's "only harm is the result of its own filing of this lawsuit." Response, DN 34, at PageID# 519.

**(a) Non-Use**

Kaufman & Stigger's proposed amended complaint alleges that certain registered marks belonging to AAMIL should be cancelled because they have never been used for the listed "Legal Services." Paragraph 107 alleges that "AAMIL has never used the marks covered by the [following listed] Registrations in commerce . . . in connection with the Legal Services recited therein because AAMIL does not provide Legal Services." Proposed Amd. Compl., DN 25-3, at ¶ 107. The next paragraph alleges that none of AAMIL's law-firm members use AAMIL's marks "to identify their Legal Services." *Id.* at ¶ 108. The allegations define "Legal Services" to include "'legal services,' 'legal advisory services,' 'provision of legal consultations, legal advice and representation of others in legal matters, legal research'" *Id.* at ¶ 67. Additionally, Kaufman & Stigger has alleged that "[m]ore than three years have elapsed" since the listed trademarks were registered. *Id.* at ¶ 109.

These allegations meet the criteria for cancellation based on non-use as set out in the Lanham Act. The statute states that a cancellation petition may be filed "at any time after a 3-year period following the date of registration, if the registered mark has never been used in commerce on or in connection with some or all of the . . . services recited in the registration . . . ." 15 U.S.C. § 1064(6). The Lanham Act also empowers a court to order the cancellation of registrations. 15 U.S.C. § 1119. Defendants do not argue that the proposed amended complaint omits allegations

that meet these statutory requisites. Instead, they assert that the proposed claim fails because the allegations of non-use on which it rests are false. Response, DN 34, at PageID# 520.

Defendants first contend that Kaufman & Stigger's proffered allegations demonstrate this falsity. *Id.* The Court disagrees. None of the paragraphs of the proposed amended complaint on which Defendants rely show that the non-use allegations are false. Defendants have taken those paragraphs out of context. And, when the allegations are read as a whole, it is clear that they draw a contrast between providing "Legal Services" as defined in the proposed amended complaint and the services that AAMIL actually provides which allegedly are not "Legal Services." Second, Defendants rely on "evidence produced" in a deposition to argue that the allegations are false. Again, such is a matter of proof, not pleading.

**(b) Abandonment**

In pertinent part, the Lanham Act defines "abandonment" as follows:

> A mark shall be deemed to be "abandoned" if either of the following occurs:
>
> (1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

15 U.S.C. § 1127. Defendants contend that Kaufman & Stigger has failed to plead plausible abandonment claims because testimony adduced in discovery shows that AAMIL has been using its marks. Response, DN 34, at PageID# 523-24. But that argument goes to whether Kaufman & Stigger can ultimately prove an abandonment claim, not whether it has pleaded one.

As for an attack on Kaufman & Stigger's allegations, Defendants argue that an abandonment claim requires proof of both discontinuance of use and "intent to not resume such use." *Id.* at PageID# 522. They argue that Kaufman & Stigger has failed to plead facts supporting the conclusion that AAMIL did not intend to resume using its marks. Thus, it has failed to

adequately plead abandonment. *Id.* This argument overlooks what, by statute, constitutes a prima facie showing of abandonment. Kaufman & Stigger has alleged non-use of AMMIL's marks in connection with the provision of "Legal Services" and has also alleged non-use for a period of at least three years. Proposed Amd. Compl., DN 25-3, at ¶¶ 108, 109, 114, and 117. Those allegations state a prima facie case of abandonment. 15 U.S.C. § 1127.

Finally, Defendants contend that Kaufman & Stigger cannot plausibly claim abandonment while simultaneously suing for infringement based on AAMIL's use of its marks in Kentucky. Response, DN 34, at PageID# 522-23. That argument is not well-taken. Kaufman & Stigger's cancellation claim goes to the validity of AAMIL's registrations. It is based on the assertion that AAMIL has never provided legal services. Given that fact, according to the allegations, it was impossible for AAMIL to have used its marks in connection with the provision of legal services. That is, AAMIL abandoned the use of its marks in connection with the provision of legal services from the get-go and for the next three years. These allegations do not assert that AAMIL never used the marks at all. Instead, they assert that they never used them in connection with the provision of legal services. Hence, according to the proposed pleading, to the extent the registrations are based on such alleged use, they should be cancelled in whole or in part. *See* Proposed Amd. Compl., DN 25-3, at ¶¶ 66-70, ¶¶ 107-114.

**(c) Void Ab Initio**

Defendants attack Kaufman & Stigger's allegation that certain AAMIL registrations are void *ab initio.* That assertion is grounded on the allegation that AAMIL never owned the marks but stated that it did and also falsely stated that it had been using them since January 1, 2001. Proposed Amd. Compl., DN 25-3, at ¶¶ 122-127. Defendants argue that AAMIL did not make a false representation. That is so, according to Defendants because it properly tacked-on to a predecessor's use which is evidenced by certain deposition testimony. Response, DN 34, at

PageID# 528. Setting aside the merits of the assertion, it remains that it goes to what the evidence in this case might ultimately show and not to adequacy of Kaufman & Stigger's allegations. As such, it fails to provide a proper ground on which to deny amendment. Nor does *NetJets, Inc. v. IntelliJet Grp., LLC*, 678 F. App'x 343 (6th Cir. 2017) require the Court to reject Kaufman & Stigger's claim outright. In that case, the Court explained:

> Section 1064 of the Lanham Act limits the ability to challenge a mark that has been registered for five years. *See* 15 U.S.C. § 1064. Under § 1064(3), petitions for cancellation of a mark registered for five years may be brought only for a limited set of reasons, ***including fraudulent registration*** or if the mark has become generic.

*Id.* at 348 (emphasis added). Unlike the plaintiff in *NetJets*, Kaufman & Stigger has alleged fraudulent registration as a ground for finding that AAMIL's registered marks should be cancelled because the fraud renders them *void ab initio*. Proposed Amd. Compl., DN 25-3, § 119 (registered marks are "void ab initio" based on false representations as to ownership and other fraud).

**(d) Fraud**

Defendants acknowledge that a trademark registration may be cancelled if it was "obtained fraudulently." Response, DN 34, at PageID# 524. Such a claim, they contend must satisfy the heightened pleading standard set out in FED. R. CIV. P. 9(b). They assert that the proposed amended complaint's fraud allegations fail to meet this standard, implying that amendment to add the claim should be denied for this reason. *Id*. Defendants' argument goes on to address certain elements of a fraud claim. They explain that that to state a claim for fraud, a complaint must contain allegations that "(1) AAMIL made a false representation concerning a material fact; (2) AAMIL knew or believed the representation was false; (3) AAMIL intended to induce reliance on the misrepresentation; (4) there was actual and reasonable reliance on the misrepresentation; and (5) damages were proximately caused by that reliance." *Id.*

Based on those elements, Defendants first contend that the proposed amended complaint does not allege facts that would support the conclusion that AAMIL made a false representation. *Id.* at PageID# 524-25. But instead of supporting this assertion based on the proposed pleading's content, Defendants argue that underlying events and testimony prove that no false statements as to ownership or continuous use were made, particularly given the law as to tacking on and assignment of trademarks. *Id.* at PageID# 525-26 (asserting that the USPTO's accepted AAMIL's statements and pointing to deposition testimony regarding tacking on and assignment of certain marks). None of these arguments bear on the allegations themselves, however. For this reason, Defendants' arguments are again misplaced. Moreover, the proposed pleading does contain allegations as to what the allegedly false statements were, who allegedly made them, when they were allegedly made and where they were allegedly made. *See* Reply in Supp. of Mot. to Amend, DN 41, at PageID# 721-22 (identifying same).

Defendants also assert that the proposed pleading contains no allegations of fact concerning AAMIL's intent to induce reliance on its false statements or damages to Kaufman & Stigger proximately caused by the allegedly false statements. Response, DN 34, at PageID# 526. First, Defendants have again failed to develop any argument in support of their contentions. That is, there is no explanation as to what counts as damages or injury caused by fraudulent registrations or what allegations are needed to establish intent to induce. Indeed, Rule 9 provides that intent may be pleaded generally: "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). As for allegations of damages or injury caused by the false representations, Defendants offer no explanation as to what "damages" or injury means in the context of cancellation under § 1064. The Court again declines to entertain Defendants' bare contention in the absence of any developed argument in support of it.

In sum, Defendants have failed to establish that the amendments proposed by Kaufman & Stigger are futile or that Kaufman & Stigger lacks standing to bring its claims. Accordingly, amendment will be allowed.

**B. Defendants' Motion for a Judgment on the Pleadings**

"Once an amended pleading is interposed, the original pleading no longer performs any function in the case." *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021) (internal quotation marks and citation omitted). Accordingly, the general rule is that an amended complaint moots a Rule 12(b) motion to dismiss. *Id.* Rule 12(c) motions for a judgment on the pleadings are governed by the same standards. *Hindel v. Husted,* 875 F.3d 344, 346 (6th Cir. 2017); *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). Having determined that amendment should be allowed, the Court will deny Defendants' Rule 12(c) motion as moot.

**CONCLUSION**

For the reasons set forth herein, Plaintiff's Motion for Leave to Amend the Verified Complaint **(DN 25)** is **GRANTED**. The Clerk of Court is hereby **DIRECTED** to file a copy of the proposed Amended Complaint and the exhibits thereto as of the date of this Memorandum Opinion and Order. Defendants' Motion for a Judgment on the Pleadings **(DN 26)** is **DENIED as moot.**

**IT IS SO ORDERED.**

October 26, 2026

**Charles R. Simpson III, Senior Judge**
**United States District Court**